# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**BRENDON BARTON**                                                                                           **PLAINTIFF**
**ADC #152031**

**V.**                        **NO. 4:20-cv-01450-KGB-ERE**

**KENYAN RANDALL,** *et al.*                                                             **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**      **Procedure for Filing Objections:**

This Recommendation for the dismissal of Mr. Barton's claims has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.**      **Background:**

Plaintiff Brendon Barton, an Arkansas Division of Correction ("ADC") inmate, filed this *pro se* civil rights lawsuit under 42 U.S.C. § 1983. *Docs. 1, 5, 52.*

Mr. Barton is currently proceeding on: (1) retaliation claims against Defendants Randall, Gaines, Davis, Spears, Matthews, Jackson, and Culclager; (2) a failure to protect claim against Defendants Gaines and Blount; (3) a deliberate indifference claim against Defendants Campbell and Warren; and (4) a failure to train claim against Defendants Payne and Kelly.[1] All of his claims arise from Officer Shelisa Harris's alleged sexual assault on him on multiple occasions while housed at the Tucker Maximum Security Unit.

Pending before the Court is Defendants' motion for summary judgment and amended motion for summary judgment, a statement of undisputed facts, and a supporting brief arguing that Mr. Barton failed to fully exhaust his administrative remedies before filing this lawsuit. *Docs. 121, 122, 123, 124, 125*. Mr. Barton has not responded to Defendants' motions, and the time for doing so has passed. *Doc. 126*. Accordingly, Defendants' amended motion for summary judgment (*Doc. 124*) is ripe for review.[2]

---

[1] The undersigned previously recommended that Mr. Barton's claims against Defendants Jefferson and Bass be dismissed based on his failure to state a plausible constitutional claim for relief against them. *Doc. 7*. In addition, the undersigned has recommended that Mr. Barton's claims against Defendants Broughton, Spillman, Fletcher, Alsopp, Gurley, Sanders, Adams, Smith, Williams, Wilson, and Harris, as well as the Doe Defendants, based on his failure to timely serve those Defendants. *Docs. 40, 56, 59, 64, 69, 75, 88, 106, 115*.
This Recommendation assumes that each of the pending Partial Recommendations will be adopted.

[2] Because both motions make the same arguments, the undersigned will treat Defendants' amended motion for summary judgment as the operative motion and recommend the motion for summary judgment be denied as moot.

For the reasons explained below, the undersigned recommends that the Court grant Defendants' amended motion for summary judgment and dismiss, without prejudice, Mr. Barton's remaining claims.

## III. Discussion:

### A. The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Barton to satisfy the ADC's requirements for raising and exhausting the claims he is asserting in this lawsuit before bringing this action.[3]

---

[3] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

3

**B.     The ADC's Exhaustion Policy**

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 14-16. *Doc. 124-1*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 17*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising that claim with the Warden within three business days of the denial of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 5-13*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejection of an appeal. *Id. at 12*.

Thus, to properly exhaust his administrative remedies with respect to his claims against Defendants, Mr. Barton was required to present the claim in a timely filed grievance and go through all three steps of the ADC's grievance process before initiating this lawsuit. See *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that administrative exhaustion "means using all steps that the agency holds out and doing

so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original).

### C. Mr. Barton's Grievance History

Defendants submit the declaration of Terri Grigsby Brown, the ADC Inmate Grievance Supervisor, who states that Mr. Barton filed and fully exhausted five grievances during the time period relevant to this lawsuit: (1) MX-19-287; (2) MX-19-288; (3) MX-19-286; (4) MX-19-631; and (5) MX-19-1363.[4] *Doc.124-2 at 6*. As explained below, the matters asserted in these exhausted grievances either: (1) do not name any of the remaining Defendants; (2) do not relate to Mr. Barton's claims in this lawsuit; or (3) both. Accordingly, Mr. Barton cannot rely on any of these fully exhausted grievances to show that he exhausted his administrative remedies as to any of the remaining claims in this lawsuit.

In grievance MX-19-287, Mr. Barton complained that unidentified ADC staff members took "adverse action" and that he was assigned to behavior control without cause. *Doc. 124-3 at 3*. Although he specifically states that he believes that ADC staff members retaliated against for filing grievances, he fails to identify any ADC staff member in grievance MX-19-287. Warden Culclager responded to grievance

---

[4] Ms. Brown explains that, although Mr. Barton filed six other grievances during the relevant time period: he did not appeal the grievance decisions for two of those grievances (MX-19-1514 and MX-19-548); he took no further action for two of those grievances (MX-19-295 and MX-19-294); and two of those grievances related to his medical care (MX-19-1368 and MX-19-1328). *Doc. 124-2 at 6*.

MX-19-287 by stating that this grievance should have been rejected as frivolous based on Mr. Barton's failure to identify the staff involved in the alleged "adverse action." *Id. at 2*. She found Mr. Barton's appeal of grievance MX-19-287 to be without merit. The Chief Deputy Director rejected Mr. Barton's appeal of that grievance decision as frivolous. *Doc. 124-3 at 1*. Although Mr. Barton fully exhausted grievance MX-19-287, the grievance raises matters that are unrelated to the remaining claims in this lawsuit, and it also fails to name any of the Defendants. Accordingly, in grievance MX-19-287, Mr. Barton failed to exhaust any remaining claim in this lawsuit.

In grievance MX-19-288, Mr. Barton alleged that officers at the Tucker Unit were "conspiring and retaliating" against him. *Doc. 124-4 at 4*. However, Mr. Barton again failed to identify any staff member responsible for any such conduct. Warden Culclager rejected this grievance for being duplicative of MX-19-287. *Id. at 2*. The Chief Deputy Director rejected Mr. Barton's appeal of Warden Cuclager's decision based on Mr. Barton's failure to follow ADC grievance policy. *Id. at 1*. Accordingly, in grievance MX-19-288, Mr. Barton failed to exhaust any remaining claim in this lawsuit.

In grievance MX-19-286, Mr. Barton complained that he was missing several items that he had purchased in the commissary. *Doc. 124-5 at 4*. He explained that he asked various officers where his items were located, including Defendant Spears,

6

but those officers could not provide him any information. In response, Warden Culclager determined that Mr. Barton's property had been returned to him and found his grievance to be without merit. *Id. at 3*. Although Mr. Barton fully exhausted this grievance, the matters grieved are unrelated to the claims in this lawsuit. Accordingly, in grievance MX-19-286, Mr. Barton failed to exhaust any remaining claim in this lawsuit.

In grievance MX-19-631, Mr. Barton complained that, although ADC staff members confiscated his personal property before he was transferred to behavior control, ADC staff had not returned those items to him. *Doc. 124-6 at 3*. Again, the claims in this lawsuit are unrelated to the personal property issues asserted in grievance MX-19-631. As a result, in grievance MX-19-631, Mr. Barton failed to exhaust any remaining claim in this lawsuit.

In grievance MX-19-1363, Mr. Barton complains that he has not been provided commissary receipts and inventory of his personal property. *Doc. 124-7 at 3*. Again, the claims in this lawsuit are unrelated to the issues asserted in grievance MX-19-1363. As a result, in grievance MX-19-1363, Mr. Barton failed to fully exhaust any claim in this lawsuit.

Mr. Barton offers no evidence to dispute Defendants' evidentiary showing that he failed to fully exhaust his administrative remedies regarding his remaining claims in this lawsuit. Thus, on this record, there is no genuine issue of material fact

regarding his failure to exhaust his administrative remedies, and Defendants are entitled to judgment as a matter of law. Mr. Barton's claims should be dismissed without prejudice.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' amended motion for summary judgment (*Doc. 124*) be GRANTED. Defendants' motion for summary judgment (*Doc. 121*) be DENIED, as moot.

2. Mr. Barton's remaining claims against Defendants Randall, Gaines, Campbell, Davis, Payne, Warren, Spears, Mathews, Jackson, Kelly, Culclager, and Blount be DISMISSED, without prejudice, based on his failure to exhaust his administrative remedies.

3. Assuming all pending Recommendations are adopted, the Clerk be instructed to close this case.

Dated this 27th day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE